**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| AYDA HUSAM AHMAD, *et. al,* | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | 13 Civ. 3376 (JMF) |
| | ) | |
| CHRISTIAN FRIENDS OF ISRAELI | ) | |
| COMMUNITIES, THE HEBRON FUND, | ) | |
| INC., CENTRAL FUND OF ISRAEL, ONE | ) | |
| ISRAEL FUND, LTD., *and* AMERICAN | ) | |
| FRIENDS OF ATERET COHANIM, INC., | ) | |
| | ) | |
| *Defendants.* | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

NATHAN LEWIN (NL-3424)
ALYZA D. LEWIN (AL-2284)
LEWIN & LEWIN, LLP
1775 Eye Street NW
 Suite 850
Washington, DC  20006
(202) 828-1000
nat@lewinlewin.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 5

    I.    THE ANTI-TERRORISM ACT ("ATA") CLAIM MUST BE
         DISMISSED UNDER RECENT DECISIONS OF THE SECOND
         CIRCUIT.................................................................................................... 5

    II.   THE MISCONDUCT ALLEGED IN THE AMENDED
         COMPLAINT TO HAVE BEEN COMMITTED AGAINST
         AMERICAN CITIZENS IS ASSAULT AND VANDALISM
         BUT IS NOT "INTERNATIONAL TERRORISM" ........................................... 9

    III.  THE DEFENDANTS DID NOT FUND DESIGNATED FOREIGN
         TERRORIST ORGANIZATIONS AND THE PERPETRATORS OF
         THE ALLEGED MISCONDUCT ARE UNKNOWN ...................................... 13

    IV.  THE ALIEN TORT STATUTE ("ATS") CLAIM MUST BE
         DISMISSED BECAUSE THE CONDUCT ALLEGED DOES
         NOT VIOLATE INTERNATIONAL LAW ..................................................... 15

    CONCLUSION ............................................................................................... 17

# TABLE OF AUTHORITIES

*Page*

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................2, 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) .......................................................5, 6

*Boim v. Holy Land Foundation for Relief and Development*,
    549 F.3d 685 (7th Cir. 2008) ...................................................................................13

*Interpharm, Inc. v. Wells Fargo Bank*, 655 F.3d 136 (2d Cir. 2011) ...................................2

*In re Terrorist Attacks on September 11, 2001*, 714 F.3d 118 (2d Cir. 2013)........... *passim*

*Mortimer Offshore Servs. v. Federal Republic of Germany*,
    615 F.3d 97 (2d Cir. 2010)..........................................................................................2

*Oppenheimer & Co., Inc. v. Trans Energy, Inc.*,
    2013 WL 2302439 (S.D.N.Y. May 23, 2013) ..............................................................2

*Orkin v. Swiss Confederation,* 444 Fed. Appx. 469 (2d Cir. 2011)....................................16

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) ..................................................... *passim*

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)................................................................16

*Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774 (D.C. Cir. 1984) ...................................16

**STATUTES AND COURT RULES**

18 U.S.C. § 2331(1) ...............................................................................................................9

18 U.S.C. § 2331(1)(A)..........................................................................................................11

18 U.S.C. § 2331(1)(B)..........................................................................................................11

18 U.S.C. § 2333 ........................................................................................................ *passim*

18 U.S.C. § 2339A.................................................................................................................10

18 U.S.C. § 2339B ..........................................................................................................10, 13

18 U.S.C. § 2339B(g)(4).......................................................................................................10

18 U.S.C. § 2339C ................................................................................................................10

22 U.S.C. § 2656f(d).............................................................................................................15

28 U.S.C. § 1350...........................................................................................................15, 17

Fed. R. Civ. P. 12(b)(6).........................................................................................................9

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AYDA HUSAM AHMAD, *et. al,* | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | 13 Civ. 3376 (JMF) |
| | ) | |
| CHRISTIAN FRIENDS OF ISRAELI | ) | |
| COMMUNITIES, THE HEBRON FUND, | ) | |
| INC., CENTRAL FUND OF ISRAEL, ONE | ) | |
| ISRAEL FUND, LTD., *and* AMERICAN | ) | |
| FRIENDS OF ATERET COHANIM, INC., | ) | |
| | ) | |
| *Defendants.* | ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

This lawsuit is a poorly disguised attempt to cripple five upstanding American charities that have been providing social-welfare assistance to people living in Israel, including, but not limited to, those living lawfully in communities in the area that the United States calls "the West Bank." The plaintiffs brand all such residents "Settlers," accuse the entire population of terrorism, charge them with violating international law by living where they do, and tar the five charities with participation in violence against Palestinians. There is, however, not a shred of proof or specific allegation that the charities encourage or support in any way the misconduct described in the Amended Complaint. The plaintiffs cannot allege in good faith that the financial assistance provided by the charities proximately caused the incidents described in the Amended Complaint. Nor can they allege that the charities – or even the perpetrators (whose identities are unknown) – had the intent that federal law prescribes to be deemed "terrorists." Yet they

fabricate out of whole cloth the false charge that transfer of resources to residents of "the West Bank" is a violation of international law that entitles aliens to bring civil lawsuits in United States courts.

This Court has recently had occasion to address a complaint that made unfounded conclusory allegations. Quoting from decisions of the Court of Appeals for the Second Circuit in *Interpharm, Inc. v. Wells Fargo Bank*, 655 F.3d 136, 141 (2d Cir. 2011), and in *Mortimer Offshore Servs. v. Federal Republic of Germany*, 615 F.3d 97, 114 (2d Cir. 2010), this Court observed in its recent ruling in *Oppenheimer & Co., Inc. v. Trans Energy, Inc.*, 2013 WL 2302439 at *3 (S.D.N.Y. May 23, 2013), that the current standard for dismissal under Federal Rule of Civil Procedure 12(b)(6) "is not so liberal that a 'threadbare' recital of the elements of a claim 'supported by mere conclusory statements' can suffice to defeat a motion to dismiss." The correct standard after *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), this Court said, is that "a complaint must contain enough 'factual content' to allow a court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

Both claims in the Amended Complaint are "threadbare" recitals of "conclusory statements." Even if all the Amended Complaint's allegations are accepted as true, they do not warrant a "reasonable inference" that any or all of the defendants are liable for the acts of misconduct alleged in Paragraphs 23, 24, 26, 27, 29, 30, 31, 32, 33, 70, 81, and 82.

The Amended Complaint alleges only that the five defendant organizations solicit contributions in the United States (Paragraphs 3-7, 17) and that they provide funds to "the Settlers or organizations controlled by them" (Paragraph 8). In wholly conclusory assertions, the Amended Complaint recites in Paragraph 8 that the funds provided to "the Settlers" are used "to

2

support the attacks by the Settlers on Palestinians living in Occupied Palestine, and to support the terrorist acts of the Settlers against Palestinians and other persons in Occupied Palestine."

There is no factual allegation in the Amended Complaint to support an inference that any of the five defendant organizations intend that the funds they provide to "the Settlers" be used to commit any violent acts or vandalism. Indeed, the Amended Complaint fails to allege any fact that would lead any of the defendants to know or believe that the funds they transmit to "the Settlers" are a proximate cause or contribute in any manner to the misconduct alleged in the Paragraphs enumerated above.

No nonconclusory factual allegation in the Amended Complaint ties "the Settlers" to any "attacks on Palestinians" or to "terrorist acts against Palestinians." Nor is there any specific allegation in the Amended Complaint to support the conclusory assertion that "the Settlers" control organizations that are responsible for any of the misconduct alleged in the Amended Complaint. The Amended Complaint alleges only that acts of violence and property damage were committed by largely unknown persons in the area where "the Settlers" reside.

Neither "the Settlers" nor the defendants – entities that provide financial support for "the Settlers" everyday needs – can be held liable for the misconduct of unidentified persons simply because the perpetrators committed their hostile acts in the geographical area where "the Settlers" reside. If liability were imposed on such a legal theory, every American organization that provides funds for the relief or assistance of civilians living in Gaza should be liable, by parallel reasoning, for injuries or property damage suffered as a result of Hamas rockets fired from within Gaza against Israeli civilian populations in Sderot or Beersheba. American charities contributing to legitimate social welfare agencies in Gaza cannot be held civilly liable for violent acts against Israeli civilians committed by unidentified "Gazans." By the same token, American

3

charities like the defendants that contribute to the welfare of "the Settlers" should not be held civilly liable for violence committed by unidentified "Settlers."

No nonclusory allegation in the Amended Complaint recites a single fact to support a causal connection between funds provided by the five organizations to "the Settlers" and the misconduct alleged in Paragraphs 23 and 24 of the Amended Complaint as having injured American-citizen plaintiffs. This omission in the Amended Complaint is sufficient to require dismissal of the First Cause of Action ("the ATA claim") under the recent Second Circuit decisions in *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 118 (2d Cir. 2013), and *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013). The Second Cause of Action ("the ATS claim") must also be dismissed because the allegations of the Amended Complaint fail to describe a violation of international law.

The only plaintiffs who can assert an ATA claim are the two American-citizen plaintiffs. The Amended Complaint also alleges no conduct with respect to these two plaintiffs that constitutes "international terrorism" as defined by federal law. One plaintiff alleges that he was "stoned" by unknown persons who he identifies as "Settlers." No factual allegation identifies the perpetrators or their motives. The Amended Complaint fails to allege the intent that is required to constitute an act of international terrorism. The other American-citizen plaintiff alleges that his property was vandalized, but he also does not allege facts identifying the perpetrators or their intent so that the attacks would satisfy the statutory definition of "terrorism." Congress defined "terrorism" as "violent acts or acts dangerous to human life," thereby excluding from the reach of Section 2333 simple assault and vandalism to property.

Apart from the Amended Complaint's conclusory declaration, there is no factual support in the Amended Complaint for the assertions that "the Settlers" reside in "illegal" settlements or

4

that they "illegally take land in Occupied Palestine [SIC]." The "Settlers" are, in fact, Israelis who have personally chosen to make their homes in an area that, as of today, is not deemed by United States' foreign policy to be part of Israel. That does not make their residence "illegal" or make their settlements – most of which have been formally endorsed by acts of the Israeli government – "illegal." The Alien Tort Statute ("ATS") claim must, therefore, be dismissed because the Amended Complaint fails to provide any factual basis for concluding that the alleged misconduct violated "the law of nations or a treaty of the United States."

## ARGUMENT

## I.

## THE ANTI-TERRORISM ACT ("ATA") CLAIM MUST BE DISMISSED UNDER RECENT DECISIONS OF THE SECOND CIRCUIT

The Court of Appeals for the Second Circuit recently affirmed dismissals of two complaints that sought to impose liability under 18 U.S.C. § 2333 on defendants who had allegedly knowingly assisted in the financing of terrorist acts that injured American-citizen victims. *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 118 (2d Cir. 2013); *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013). In both cases (decided by different three-judge panels) the Second Circuit agreed with District Courts that had found that the complaints lacked "plausible allegations" that the defendants' transfers of funds "proximately caused plaintiffs' injuries." 708 F.3d at 95; see 714 F.3d at 124-125.

The Second Circuit held in *Rothstein* that allegations that the defendant UBS Bank knew that funds it provided to Iran "would be used to cause and facilitate terrorist attacks" were "conclusory allegations that do not meet *Twombly*'s [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007)] plausibility standard with respect to the need for a proximate causal relationship

5

between the cash transferred by UBS to Iran and the terrorist attacks by Hizbollah and Hamas that injured plaintiffs." 708 F.3d at 97. The Court's determination in *Rothstein* was that the complaint contained "no nonclusory allegation . . . that plausibly shows that the moneys UBS transferred to Iran were in fact sent to Hizbollah or Hamas or that Iran would have been unable to fund the attacks by Hizbollah and Hamas without the cash provided by UBS."

The same is true of the allegations of the Amended Complaint in this case. They are entirely conclusory and fail to meet the "plausibility" standard of *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), with respect to a proximate causal relationship between funds provided to "the Settlers" and the alleged terrorist attacks.

Circuit Judge Kearse's opinion in the *Rothstein* case specifies the omissions from the plaintiffs' complaint in that case that led the Second Circuit to conclude that the complaint failed to allege facts that plausibly demonstrated that defendant's transfers of funds to Iran was the "proximate cause" of the plaintiffs' injuries. 708 F.3d at 97. The complaint in this case suffers from identical omissions:

(1) "The Complaint does not allege that UBS was a participant in the terrorist attacks that injured plaintiffs." – The Amended Complaint in this case similarly fails to allege that any of the named defendants "was a participant" in the misconduct alleged in Paragraphs 23 and 24 or in any other act that the Amended Complaint characterizes as "terrorism."

(2) "It does not allege that UBS provided money to Hizbollah or Hamas." – The Amended Complaint in this case similarly fails to allege that any of the defendants provided funds directly to organizations like Hizbollah or Hamas that engage in terrorism. Indeed, while UBS' conduct in the *Rothstein* litigation was criminal insofar as UBS directly provided funds to Iran, which was acknowledged to be a government that was a "state sponsor of terrorism," the

6

defendants in this case lawfully provided money to "the Settlers" – a collective noun describing law-abiding Israeli citizens by the location where they choose to live.

(3) "It does not allege that U.S. currency UBS transferred to Iran was given to Hizbollah or Hamas." – The Amended Complaint in this case similarly fails to allege that any funds solicited by the defendants in the United States or elsewhere and transferred to "the Settlers" was "given to" the perpetrators of the acts characterized as "terrorism" or to any organization or group that committed the violent acts or the property damage alleged in the Amended Complaint.

No organizations are named in the allegations of Paragraphs 23 and 24, which relate to incidents that allegedly injured American citizens. The only identifications by name in the Amended Complaint with respect to the ATS plaintiffs are (a) Bat Ayin (a legally constituted village) (Paragraph 61); (b) Yitzhar Settlers (Israelis who live in Yitzhar) (Paragraphs 62, 65, 66, 67); (c) Odyosefhai Rabbinical College (Paragraphs 63, 64); and (d) "Hilltop Youth" (a slang name for aggressive teenagers) (Paragraphs 63, 64, 69).

The Amended Complaint fails to allege that funds were given by any of the defendants to any of these persons or entities. Providing funds to Iran – acknowledged to be a state sponsor of terrorism and financer of Hizbollah and Hamas – was not deemed by the *Rothstein* court to be equivalent to giving money to Hizbollah or Hamas. Providing funds to "the Settlers" – not deemed by any official agency to be sponsors of terrorism – can surely not be deemed equivalent to giving funds to Bat Ayin, Yitzhar Settlers, Od Yosef Chai Rabbinical College (the correct name), or to any of the Hilltop Youth – even if, accepting the complaint's allegations as truthful, these individuals or entities are responsible for the misconduct alleged in the Amended Complaint.

(4) "And it does not allege that if UBS had not transferred U.S. currency to Iran, Iran, with its billions of dollars in reserve, would not have funded the attacks in which plaintiffs were injured." – The Amended Complaint in this case similarly fails to allege that if the named defendants had not transferred funds they solicited in the United States to "the Settlers," the perpetrators of the acts described in Paragraphs 23 and 24 of the Amended Complaint could not have committed the misconduct described in those Paragraphs.

The Second Circuit reaffirmed the *Rothstein* proximate cause standard in Circuit Judge Cabranes' opinion in *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 118 (2d Cir. 2013). It sustained dismissal of a complaint that failed to allege that charities and financial institutions that provided support and resources to al Qaeda had either "participated in the September 11, 2001 attacks or that they provided money directly to al Qaeda" or "that the money allegedly donated by the . . . defendants to the purported charities actually was transferred to al Qaeda and aided in the September 11, 2001 attacks." 714 F.3d at 124. The very same omissions doom the ATA claim in the Amended Complaint. The defendants neither "participated" in the alleged misconduct nor provided money directly to the perpetrators of the described acts. And the Amended Complaint does not allege facts plausibly supporting the inference that the money solicited by the defendants and provided to "the Settlers" actually was transferred to any person or organization that committed the assault and property damage alleged in Paragraphs 23 and 24.

**II.**

**THE MISCONDUCT ALLEGED IN THE
AMENDED COMPLAINT TO HAVE BEEN
COMMITTED AGAINST AMERICAN CITIZENS
IS ASSAULT AND VANDALISM BUT IS NOT
"INTERNATIONAL TERRORISM"**

The civil damages remedy of the Anti-Terrorism Act (18 U.S.C. § 2333) was not enacted to open the federal courts to lawsuits for every assault or property damage committed anywhere in the world against a "national of the United States." There are, in this case, only two plaintiffs who are American citizens, and Paragraphs 23 and 24 of the Amended Complaint describe the acts that they claim were attributable to funds collected in the United States by the defendants.

Neither of the American-citizen plaintiffs alleges any fact that relates the assaults and property damage described in Paragraphs 23 and 24 to the definition of "international terrorism" that appears in 18 U.S.C. § 2331(1). Plaintiff Ahmad alleges that he was "attacked several times by the Settlers" and that he "was stoned by The Settlers when he tried to protect his olive trees from being uprooted." Accepting, as we must for purposes of this Motion under Rule 12(b)(6), that plaintiff was assaulted as alleged, no fact is alleged in the Amended Complaint that suggests that the assaults on plaintiff Ahmad were "intended to intimidate or coerce a civilian population" or were "intended to influence the policy of a government by intimidation or coercion" or were "intended to affect the conduct of a government by mass destruction, assassination, or kidnapping." The recitation of facts in Paragraph 23 fails to negate the possibility that there was personal hostility between the plaintiff and those who assaulted him while he was trying to protect his trees from being uprooted. The intent and motivation for the described assault is not even alleged in Paragraph 23 of the Amended Complaint. And Paragraph 23 alleges that the

9

plaintiff reported the assault to the Israeli police – an indication that he viewed it as a criminal assault that could be fully prosecuted under Israeli law.

Plaintiff Mohammed alleges, as well, in Paragraph 24 of the Amended Complaint, that his property was vandalized by "Settlers." No fact is alleged in the Amended Complaint to suggest that the acts of vandalism described in Paragraph 24 satisfied the "intent" component of the statutory definition of "international terrorism."

To be sure, Paragraphs 95 and 97 of the Amended Complaint allege in wholly conclusory fashion that "the American plaintiffs suffered the harm described herein" as a result of the wire transfer of funds and other conduct by the five defendants. This assertion is deficient, for all the reasons previously discussed at pp. 5-8, *supra*, in its failure to allege any factual basis for finding that the assault by "Settlers" on plaintiff Ahmad and the vandalism of plaintiff Mohammed's property by "Settlers" was proximately caused by the defendants' transfer of funds.

Sections 2339A, 2339B, and 2339C of Title 18, which are cited in Paragraph 86 of the Amended Complaint, are criminal statutes that are violated only if there is a transfer of material support or resources with knowledge that the recipient is a foreign terrorist organization or with the intention that the support or resources will be used for terrorism. The citation in Paragraph 87 of the Amended Complaint of Section 2339B(g)(4) [which is mis-cited in the Amended Complaint as Section "339B(g)(4)"] does not advance the plaintiffs' case. Subsection (g)(4) is violated only if the provider of "material support" has, as subsection (a)(1) requires, "knowledge that the [receiving] organization is a designated terrorist organization . . . that the organization has engaged or engages in terrorist activity . . . or that the organization has engaged or engages in terrorism . . . ." The plaintiffs cannot allege in a nonconclusory fashion that any of the defendant charities had such knowledge or intention.

10

The Amended Complaint also contains no allegation of fact to support the conclusion that the intent of the defendants or the perpetrators met the statutory standard of Section 2331(1)(B). Plaintiffs Ahmad and Mohammed have no statutory basis for suing in a federal court in the United States for every assault or act of vandalism committed against them by an Israeli or by a resident of the area known to "the Settlers" as Judea and Samaria. Nor can they sue in an American federal court every American charity that provides funds to a group of Israeli citizens merely because one or more members of the group commit unanticipated violent acts that constitute "terrorism." Only acts that meet the statutory definition – that are "intended" to achieve one of the three objectives specified in Section 2331(1)(B) – are brought within federal jurisdiction and entitle the victim to sue for damages. And only if the American charity has the intent specified in the statute or has reason to know that the beneficiary of its funding has that intent and commits "terrorist" acts may the charity be held liable under Section 2333.

Nor is it clear that the conduct described in Paragraphs 23 and 24 satisfies the statutory definition of "international terrorism." Congress limited terrorism to "violent acts or acts dangerous to human life." Vandalizing an individual's house, throwing stones at an individual, or burning a field of olive trees are not included within the statute's limited application to "violent acts or acts dangerous to human life."

Paragraph 90 of the Amended Complaint omits Section 2331(1)(A) entirely in its reference to the Anti-Terrorism Act. This omission makes it appear as if the statute authorizes a lawsuit for damages regardless of the gravity of the misconduct alleged in a plaintiff's complaint. In fact, the ATA is limited to violent conduct that endangers life and does not turn every assault or vandalism into "international terrorism" even if the perpetrator intends to intimidate or coerce a civilian population.

11

The "Price Tag Attacks" that are described in Paragraphs 29, 78, 81, and 82 of the Amended Complaint are not alleged to have injured American citizens and they are not, therefore, a basis for liability under the ATA. Even with respect to the alien plaintiffs, however, these incidents constitute local vandalism which is adequately prosecuted under Israeli law by Israeli authorities.

Moreover, the misconduct for which the non-U.S.-citizen plaintiffs seek recovery under the Alien Tort Statute is a far cry from the incidents that gave rise to the *Rothstein* and *September 11, 2001* cases that the Second Circuit recently terminated by affirming dismissals of complaints. It would be anomalous, indeed, if plaintiffs whose family members were killed in those incidents were not permitted to proceed with lawsuits under the ATA or the ATS while a foreign citizen whose house was spray-painted with graffiti or an individual who was stoned or whose house was burned and vandalized would be permitted to recover damages in an American federal court against organizations that provide financial assistance to residents of the area where the assault or vandalism occurred.

## III.

### THE DEFENDANTS DID NOT FUND DESIGNATED FOREIGN TERRORIST ORGANIZATIONS AND THE PERPETRATORS OF THE ALLEGED MISCONDUCT ARE UNKNOWN

The Amended Complaint ranges far beyond the intended reach of the Anti-Terrorism Act and the judicial decisions that have applied the law. There is no allegation that "the Settlers" – the alleged recipients of funding by the defendants -- are designated "foreign terrorist organizations" that may only be supported by committing acts that 18 U.S.C. § 2339B makes criminal. In *Rothstein* the defendant bank UBS violated American criminal law by transferring cash to Iran, which had long been designated as a "state sponsor of terrorism." The defendants in *September 11, 2001*, acted unlawfully when they contributed to "purported charities that supported al Qaeda." 714 F.3d at 123. It was, therefore, reasonable to infer, as required for liability under the ATA, that they "must have known that the money would be used in preparation for or in carrying out the killing or attempted killing of, conspiring to kill, or inflicting bodily injury on, an American citizen abroad." *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685, 691 (7th Cir. 2008) (en banc).

The defendants in this case committed no crime or unlawful act by providing funds and resources to "the Settlers." No nonclusory allegation in the Amended Complaint supports a finding of the culpable knowledge that is essential to impose civil liability under the ATA.

Moreover, unlike the recipients of funds in *Rothstein* and *September 11, 2001*, which were a government that had been officially designated a "state sponsor of terrorism" and al Qaeda, the organization universally condemned as a terrorist organization, the recipients of funds in this case are "the Settlers" – a group of individuals identified only by their residence. "The

13

Settlers" are not alleged to be a terrorist organization like al Qaeda, Hamas, or Hizbollah. The Amended Complaint alleges in Paragraph 56 only that they are "Israelis who live in The Illegal Settlements built illegally in Occupied Palestine, including East Jerusalem, within the internationally recognized borders of the future Palestinian state."

In this definition of the group that receives funding from the defendant charities the words "illegal" are conclusory and are wholly unsupported by any factual allegation in the Amended Complaint. "The Settlers" are, in fact, Israelis who have chosen to establish homes in an area that the United States does not, as of today, recognize as part of Israel. That does not make them or their homes "illegal" or make their communities – most of which have been formally endorsed by official acts of the Israeli government – "illegal."

Finally, in the terrorism cases that have heretofore been brought by American citizen victims under 18 U.S.C. § 2333, either the identity or the affiliation of the perpetrators of the terrorist acts were known. Terrorist organizations such as Hamas or Hizbollah boasted of their success in murdering civilians.

In the present case the Amended Complaint contains no allegation that identifies any perpetrator of an alleged terrorist act or specifies his or her affiliation. Paragraphs 23 and 24 of the Amended Complaint are the only ones that relate to American-citizen victims, and they refer only generically to "the Settlers" as perpetrators.

The defendants cannot be held liable for the conduct of unidentified persons simply on a conclusory allegation that the perpetrators are "Settlers" who presumably live in the neighborhood that the defendants support. Is every resident of Gaza responsible for the rockets that are fired from that area into civilian populations in Israeli towns? Can American charities

14

that provide relief to civilians living in Gaza be sued under 18 U.S.C. § 2333 on the theory that "Gazans" are responsible for all terrorism committed within Gaza's borders?

**IV.**

**THE ALIEN TORT STATUTE ("ATS") CLAIM
MUST BE DISMISSED BECAUSE THE
CONDUCT ALLEGED DOES NOT
VIOLATE INTERNATIONAL LAW**

The Amended Complaint alleges in Paragraphs 106-109 that plaintiffs who are not U.S. citizens have claims under the Alien Tort Statute (28 U.S.C. § 1350) because the Settlers' "illegal" settlements "in and of themselves" violate the law of nations. No nonconclusory fact is alleged that would support the proposition that the bare residence of Israelis in the area they know as Judea and Samaria (which the United States officially describes as "the West Bank") violates international law. Financial assistance to "Settlers" residing in these areas is, by no stretch of the imagination, a "violation of the law of nations or a treaty of the United States."

The Amended Complaint relies on the assertion that the Settlers' residence in the settlements constitutes "terrorism" as defined in 22 U.S.C. § 2656f(d) [mis-cited in the Amended Complaint as "22 U.S.C. § 2656(d)"]. But the cited section – which appears in the Title of the United States Code concerning Foreign Relations and not in the Criminal Code – does not define "terrorism" for purposes of criminal or civil liability, or as a definition of international law. Section 2656f directs the Department of State to issue annual "country reports on terrorism." Acts that might arguably be viewed by State Department personnel as "terrorism" for reporting purposes – including even the graffiti vandalism called "Price Tag Attacks" – do not, by reason of the State Department's classification, become "terrorism" for civil or criminal liability.

15

Contrary to the conclusory pejorative allegations of Paragraph 107 of the Amended Complaint, no Department of State report has ever described residence by "Settlers" in the "West Bank" as amounting to "terrorism." Whether or not United States foreign policy approves of such settlements and whether or not the United States permits government funds to benefit such settlements, the United States has never asserted that their existence or the residence of Israelis in that area violates international law. Nor does United States tax law prevent American charities that qualify under Section 501(c)(3) of the Internal Revenue Code from providing financial support to persons living in "West Bank" settlements.

In *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004), the Supreme Court approved the standard articulated by District of Columbia Circuit Judge Edwards in *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 781 (D.C. Cir. 1984) for determining whether conduct violates "the law of nations" within the meaning of the ATS. Judge Edwards said that this provision of the ATS limits the jurisdiction of American courts to "a handful of heinous actions . . . each of which violates definable, universal and obligatory norms." The Second Circuit has also approved this standard. *Orkin v. Swiss Confederation,* 444 Fed. Appx. 469, 472 (2d Cir. 2011). Residence in "the West Bank" hardly qualifies as a "heinous action."

Moreover, the ATS claim made by the non-citizen plaintiffs must be dismissed following the decision of the Court of Appeals for the Second Circuit affirming the dismissal of an ATS claim in the *September 11, 2001* case. The Second Circuit held in that case that the World Trade Center attack that resulted in almost 3000 deaths could not be the basis for an ATS claim because there was no "international consensus" that the outrageous 9/11 acts violated the law of nations. 714 F.3d at 125. If there was no "consensus" that the 9/11 attack was prohibited under

16

international law, there surely is no "consensus" that international law prohibits Israelis from living beyond the border of Israel as recognized currently by the United States.

The Amended Complaint also invokes "the Oslo Accord" in Paragraph 106 as if that document was "a treaty of the United States" within 28 U.S.C. § 1350. The Oslo Accord was a "Declaration of Principles on Interim Self-Government Arrangements" between Israel and the Palestine Liberation Organization signed in the United States in September 1993. It was not a "treaty of the United States," even though it was signed in a public ceremony by the Secretary of State of the United States. It was never submitted to the Senate for ratification and cannot be the basis for jurisdiction under the ATS.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss both claims in the Amended Complaint should be granted.

Dated:  September 12, 2013

Respectfully submitted,

s/Nathan Lewin

_____

NATHAN LEWIN (NL-3424)
ALYZA D. LEWIN (AL-2284)
LEWIN & LEWIN, LLP
1775 Eye Street NW, Suite 850
Washington, DC  20006
(202) 828-1000
nat@lewinlewin.com

*Attorneys for Defendants*

17