**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| AYDA HUSAM AHMAD, *et. al,* | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | 13 Civ. 3376 (JMF) |
| | ) | |
| CHRISTIAN FRIENDS OF ISRAELI | ) | |
| COMMUNITIES, THE HEBRON FUND, | ) | |
| INC., CENTRAL FUND OF ISRAEL, ONE | ) | |
| ISRAEL FUND, LTD., *and* AMERICAN | ) | |
| FRIENDS OF ATERET COHANIM, INC., | ) | |
| | ) | |
| *Defendants.* | ) | |

**DEFENDANTS' REPLY MEMORANDUM**
**IN SUPPORT OF MOTION TO DISMISS**

**I.**

**PLAINTIFFS CANNOT IDENTIFY A SINGLE**
**NONCLUSORY ALLEGATION THAT ANY MONEY**
**PROVIDED BY THE DEFENDANTS IS A**
**"PROXIMATE CAUSE" OF THE PLAINTIFFS' ALLEGED INJURIES**

In their Memorandum opposing Defendants' Motion To Dismiss, the plaintiffs assert that

"the Settlers . . . could not live and flourish without" financing from the defendants (p. 4), that

the defendants send funds "by wire to various Settler schools and communities in occupied

Palestine [SIC] to finance various aspects of life in the illegal [SIC] settlements" (p. 5), and that

the Settlers "could not afford to live in Occupied Palestine [SIC] without such funding" (p. 14).

On these allegations alone the plaintiffs seek to hold the defendants liable under the ATA

because, they say, two American citizens were the victims of violence allegedly perpetrated by

"Settlers," and under the ATS because vandalism and assault allegedly committed by unidentified "Settlers" amount to "terrorism" that violates international law.

Nowhere in the Amended Complaint or in the plaintiffs' Memorandum is it alleged in nonclusory fashion that even one penny of the funds lawfully and openly collected by the defendants and transferred to the "Settlers" was used to commit any act of violence. The recent rulings of the Second Circuit in the *Rothstein* and *Terrorist Attacks on September 11, 2001* cases are effectively ignored by the plaintiffs. The Second Circuit has held authoritatively that a complaint is defective and should be dismissed if it alleges only that a defendant provided funds to a group or to an entity that included individuals who committed terrorist acts or other violence that resulted in loss of life. Only if the complaint specifically alleges "proximate cause" in the traditional meaning of that term – *i.e.*, that funds provided by or transferred by a defendant were actually used by perpetrators in committing violations of the ATA or ATS – must a defendant respond on the merits in a lawsuit charging him with civil liability.

This is not a surprising or anomalous principle of law. Neighborhoods in the United States and in other nations of the world that are underprivileged or impoverished often have higher crime rates than wealthy areas. If government or private charities provide funds that enable impoverished communities to "live and flourish" and to enjoy "aspects of life" – even with knowledge that crimes are occasionally committed by unknown residents in such neighborhoods – do the funding government agencies and private charities become civilly liable to the victims of all crimes in the neighborhoods because the communities "could not exist" without external funding? The Second Circuit has declared in its recent decisions that only if it is specifically and nonclusorily alleged that the funding actually caused the criminal activity may

the funder be held civilly liable. The plaintiffs fail to acknowledge this clear instruction of the Court of Appeals.

Indeed, the unacceptable sweep of the plaintiffs' legal theory is demonstrated by their acknowledgment at page 15 of their Memorandum in Opposition that "it may very well be true" that charities that financially support the residents of Gaza are civilly liable for the consequence of every act of violence committed by a resident of Gaza. That was not the holding of "the *Boim* case and its progeny," as the plaintiffs now claim. In the *Boim* case and in all other cases in which complaints against funding entities have been permitted to proceed beyond the complaint stage, perpetrators were identified or funds were provided in violation of law to groups that were known to use their funds to engage in deliberate acts of terrorism.

## II.

### ATA LIABILITY HAS BEEN CONTEMPLATED OR IMPOSED IN CASES, INCLUDING *BOIM*, ONLY WHERE FUNDS HAVE KNOWINGLY BEEN PROVIDED TO TERRORISTS DIRECTLY OR TO ORGANIZATIONS THAT PUBLICLY ENDORSE TERRORIST ACTIVITY

Plaintiffs have not cited any judicial precedent (and we know of none) where liability under the ATA was imposed on entities that provided funds to municipalities or city councils to benefit residents of a neighborhood, as contrasted with knowingly providing funds to  individual terrorists or to organizations that publicly condone acts of terror.  In this case, the plaintiffs' claim is that by supporting the daily necessities, including "security," of Jewish residents of a particular area – the "West Bank" – the defendants are financing terrorism. No judicial decision, including the *Boim* case on which the plaintiffs rely heavily (see Plaintiffs' Memorandum of Law 15), suggests that the ATA may be invoked to impose liability for support of a neighborhood or even to force those who provide such support to undergo expensive and burdensome litigation to demonstrate that they are not responsible for violent acts committed in the neighborhood.

To be sure, liability under the ATA for funding of terrorism does not depend on whether a financed organization has officially been designated as a terrorist entity. That does not mean, however, that a plaintiff who cannot in good faith allege with specificity that a funder knew, at the time it provided money, that its funds would be used to commit terrorist acts may burden the courts and defendants with a lawsuit that rests entirely on speculation and conclusory allegations. The Seventh Circuit said in its majority opinion for an *en banc* court in *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685, 692 (7th Cir. 2008), that a defendant can be held liable under Section 2333 only if it "must have known that the money would be used in preparation for or in carrying out the killing or attempted killing of, conspiring to kill, or inflicting bodily injury on, an American citizen abroad." The *Boim* case concerned identified terrorist killers who acted on behalf of Hamas, an organization that boasted publicly whenever it murdered a Jew.

Other reported ATA cases have concerned the financing of Hamas or organizations that are known, as Hamas and Hizbollah have been, to engage in terrorism or to provide material support for terrorists. See, *e.g.*, *Estate of Parsons v. Palestinian Authority*, 651 F.3d 118 (D.C. Cir. 2011) (action against Palestinian Authority and Palestinian Liberation Organization); *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414 (E.D.N.Y. 2013) (financing of "Committee for Palestinian Welfare and Relief" that was listed as a "Specially Designated Global Terrorist"); *Gill v. Arab Bank, PLC*, 893 F. Supp.2d 474, 522 (E.D.N.Y. 2012).

Where, as in this case, the claim seeks to impose liability on the defendants on the basis of donations benefiting municipalities or the residents of a particular neighborhood or geographical area (such as "Settlers" in the "West Bank") and does not even contend that the ultimate beneficiaries are organizations that espouse terror, there is no basis to infer culpable

4

intent and knowledge that funds would be used for terrorism or other forms of violent criminal activity. Donors to residents in "West Bank" settlements seek to improve the quality of life of those whom they assist by providing peaceful, not turbulent, surroundings. In the absence of factual allegations and specific proof that they seek to have their funds used for terrorism they, unlike the funders of Hamas, Hezbollah, or any other organizations known for killing and maiming civilians, cannot be presumed to sponsor terrorism.

**III.**

**IN ADDITION TO THE GROUNDS PREVIOUSLY STATED, THE ATS CLAIM MUST BE DISMISSED BECAUSE THE CORPORATE CHARITIES CANNOT BE SUED UNDER THE ATS AND THE ATS DOES NOT APPLY TO ALLEGEDLY TORTIOUS ACTS COMMITTED OUTSIDE THE UNITED STATES**

We have presented in the Memorandum of Law In Support of Defendants' Motion To Dismiss grounds for dismissing the plaintiffs' ATS claim that is insufficiently answered by the plaintiffs in their Memorandum of Law In Opposition. There is an additional ground for dismissal of the ATS claim that was omitted from our initial Memorandum – *i.e.*, that under the law applicable in the Second Circuit claims cannot be brought against corporations under the ATS. See *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 117-123, 131-145 (2d Cir. 2010), *aff'd on other grounds*, 133 S. Ct. 1659 (2013).

To be sure, the Supreme Court did not address the Second Circuit's holding regarding corporate liability under the ATS because it affirmed dismissal of the plaintiffs' complaint on other grounds. Nonetheless, "a decision of a panel [of the Second Circuit] is binding unless and until it is overruled by the Court *en banc* or by the Supreme Court." *Baraket v. Holder*, 632 F.3d 56, 59 (2d Cir. 2011), quoting from *S & R Co. of Kingston v. Latona Truckers, Inc.*, 159 F.3d 80,

83 (2d Cir. 1998). Consequently this Court's duty to apply Second Circuit precedent requires it to dismiss this ATS claim against the five defendants, all of which are corporate charities.

Moreover, the rationale of the Supreme Court's holding in the *Kiobel* case supports dismissal of the plaintiffs' ATS claim. Although the defendants do solicit contributions in the United States and are alleged to have made wire transfers from the United States, the gravamen of the acts that give rise to the plaintiffs' complaint and that allegedly resulted in their injury occurred "within the territory of a sovereign other than the United States." 133 S. Ct. at 1663, 1669. The Supreme Court's recent interpretation of the ATS to deny jurisdiction to American courts under the ATS for conduct committed abroad should apply to the allegations of this complaint notwithstanding the peripheral activity in which the defendants engage in the United States. The Court's majority opinion noted that "even where the claims touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption against extraterritorial application." 133 S. Ct. at 1669. The plaintiffs' allegations that funds are solicited in the United States and wired from the United States are not of "sufficient force" to overcome the fact that the alleged acts of violence and alleged "terrorism" occur outside the United States.

## CONCLUSION

For the reasons stated in Defendants' Memorandum in Support of Defendants' Motion to Dismiss and in this Reply Memorandum both claims in the Amended Complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated:  October 3, 2013

Respectfully submitted,

s/Nathan Lewin

_____

NATHAN LEWIN (NL-3424)
ALYZA D. LEWIN (AL-2284)
LEWIN & LEWIN, LLP
1775 Eye Street NW, Suite 850
Washington, DC  20006
(202) 828-1000
nat@lewinlewin.com

*Attorneys for Defendants*