```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  05/05/2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                            :

AYDA HUSAM AHMAD et al.,                :

                   Plaintiffs,        :          13 Civ. 3376 (JMF)

                                      :
           -v-                       :      OPINION AND ORDER

CHRISTIAN FRIENDS OF ISRAELI COMMUNITIES :
et al.,

                                      :
                   Defendants.    :
                                      :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      This case involves an attempt to collect money damages from five American organizations for injuries sustained in connection with the Israeli-Palestinian conflict.  Plaintiffs are thirteen residents of the West Bank who were allegedly injured by Israeli citizens also living in the West Bank, referred to in the Amended Complaint as "the Settlers."  Plaintiffs bring claims under Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, and the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, based on Defendants' financial support for the Settlers.  Defendants move to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Docket No. 15).  For the reasons that follow, the motion is GRANTED.

## BACKGROUND

      The following facts are drawn from the Amended Complaint and are assumed to be true for purposes of this motion.  *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

      As noted, Plaintiffs in this action are thirteen men and women who live in the West Bank, a territory the Amended Complaint refers to as "Occupied Palestine."  (Am. Compl. (Docket No.

8) ¶ 1).  Of the thirteen Plaintiffs, two are American citizens (the "American Plaintiffs"), ten are

Palestinians, and one is Greek.  (*Id.* ¶¶ 23-33).   Plaintiffs claim that the territory where they

reside, or at least a portion of it, is "within the internationally-recognized borders of the future

Palestinian state." (*Id.* ¶¶ 1, 56).

As alleged in the Amended Complaint, the common thread among Plaintiffs is that they

have been subject to attacks by a group they refer to as "the Settlers."  (*Id.* ¶ 1).  The Settlers, as

defined by the Amended Complaint, are Israeli citizens who have built and live in communities

— or "settlements" — in the West Bank.  Plaintiffs estimate that there are "over half a million"

Settlers and allege that the existence of the settlements violates international law.  (*Id.* ¶¶ 56-58).

The attacks on Plaintiffs took varied forms, from stonings (*id.* ¶¶ 23, 33), to firebombings (*id.* ¶

26), to shootings (*id.* ¶¶ 30, 33), to beatings (*id.* ¶¶ 31-32), to the destruction of property (*id.* ¶¶

24, 32) and vandalism (*id.* ¶¶ 27-29).  According to the Amended Complaint, the attacks are

intended to "coerce, intimidate, and influence the Israeli government and public and thereby

ultimately bring the expulsion of the Palestinian residents from Occupied Palestine."  (*Id.* ¶ 66).

Defendants — Christian Friends of Israeli Communities, the Hebron Fund, Inc., the

Central Fund of Israel, One Israel, and American Friends of Ateret Cohanim — are organizations

that have provided the Settlers with financial support.  The organizations, identified in the

Amended Complaint as "purported charities," are based in the United States, and they collect

donations totaling "millions of dollars" that they wire "directly to the Settlers and the Illegal

Settlements."  (*Id.* ¶¶ 2, 68, 93).  The funds are used to "build and maintain the Illegal

Settlements, illegally take land in Occupied Palestine, to support the attacks by the Settlers on

Palestinians living in Occupied Palestine, and to support the terrorist acts of the Settlers against

Palestinians and other persons in Occupied Palestine."  (*Id.* ¶ 8).

Those wire transfers form the basis for Plaintiffs' ATA and ATS claims, claims they first asserted on May 17, 2013.  (*Id.* ¶¶ 85-89, 93-95, 109-110; Compl. (Docket No. 1)).  Plaintiffs amended their Complaint approximately one month later (Am. Compl.), and Defendants moved to dismiss the Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on September 12, 2013 (Docket No. 15).

## RULE 12(B)(6) STANDARD

A motion pursuant to Rule 12(b)(6) challenges the sufficiency of the allegations in the complaint.  *See ATSI Commnc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  To survive such a motion, a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

## DISCUSSION

Applying those standards here, Plaintiffs' claims fail as a matter of law.  The Court first addresses the ATA claims, which are brought solely by the American Plaintiffs, and then turns to the ATS claims, which are brought on behalf of all Plaintiffs.

## A.  The ATA Claims

The ATA provides that "[a]ny national of the United States injured . . . by reason of an act of international terrorism . . . may sue therefor in any appropriate district court of the United

States and shall recover threefold the damages he or she sustains."  18 U.S.C. § 2333(a).  Here, the American Plaintiffs allege that Defendants committed predicate acts of "international terrorism" by violating two federal statutes: Title 18, United States Code, Sections 2339A and 2339C.  (Am. Compl. ¶ 86).  Section 2339A prohibits the "provi[sion] of material support or resources" to terrorists, and Section 2339C prohibits the financing of terrorism.  *See, e.g.*, *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 426 (E.D.N.Y. 2013) (stating that violations of Section 2339C "are considered to be acts of 'international terrorism' under Section 2333(a)"); *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1015 (7th Cir. 2002) ("If the plaintiffs could show that [Defendants] violated . . . section 2339A . . . that conduct would certainly be sufficient to meet the definition of 'international terrorism' under sections 2333 and 2331.").[1]  To state a claim under the ATA, however, the American Plaintiffs must not only allege plausible violations of one or the other of those provisions, but they must also adequately plead "the requisite mental state[] and causation."  *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 474, 502 (E.D.N.Y. 2012).  They have failed to do so.

### 1.  Scienter

First, the American Plaintiffs have failed to plausibly allege the requisite mental state to state a claim under the ATA.  It is well established that, to be liable under the ATA, "a party must engage in knowing misconduct."  *Strauss*, 925 F. Supp. 2d at 427.  Specifically, where the predicate act of international terrorism is the provision of material support to terrorists, *see* 18 U.S.C. § 2339A, the defendant must have known or intended that the support would be used in

---

[1]      The American Plaintiffs also invoke Section 2339B, which prohibits the "provi[sion] of material support or resources" to certain designated foreign terrorist organizations.  (Am. Compl. ¶ 86).  The Amended Complaint, however, makes no allegation that "the Settlers" are a designated foreign terrorist organization.  *See* 18 U.S.C. § 2339B(g)(6).  Accordingly, the Court analyzes the American Plaintiffs' claims only under Sections 2339A and 2339C.

preparation for, or in carrying out, violations of certain federal criminal statutes.  *See Gill*, 893 F.

Supp. 2d at 504.  Where the predicate act is the financing of terrorism, *see* 18 U.S.C. § 2339C,

the defendant must have intended or known that such funds would be used to carry out terrorist

attacks.  *See Gill*, 893 F. Supp. 2d at 504.  In order to trigger liability under the ATA, the

recipient of a defendant's support need not be a designated foreign terrorist organization.  (*See*

Pls.' Mem. Law Opp'n Defs.' Mot. Dismiss ("Pls.' Mem.") (Docket No. 18) 12).  But there must

be some evidence — for instance, that the recipients of the aid have publicly stated terrorist goals

or are associates of established terrorist organizations — from which a finder of fact could

conclude that the defendant either knew, or was deliberately indifferent to the possibility, that it

was supporting international terrorism.  *See Strauss*, 925 F. Supp. 2d at 428 (holding that civil

liability under the ATA requires a defendant to at least "kn[o]w there was a substantial

probability that [it] was supporting terrorists"); *see also, e.g.*, *Weiss v. Nat'l Westminster Bank

PLC*, 936 F. Supp. 2d 100, 114 (E.D.N.Y. 2013) (dismissing, on summary judgment, an ATA

claim where "none of the payments that [defendant-bank] processed for [suspected affiliate of

Hamas] went to United States or British designated terrorist organizations").

　　　In this case, the Amended Complaint alleges no facts suggesting that Defendants were

aware — or even deliberately indifferent to the possibility — that the financial support they

provided to "the Settlers" would be used to support any violent activity.  The American Plaintiffs

allege that Defendants possessed "the specific purpose and intention of enabling and assisting . . .

hundreds of terrorist attacks against Palestinians" (Am. Compl. ¶ 69), but that allegation is

entirely conclusory.  The American Plaintiffs do not (and cannot) allege that the Settlers are a

designated terrorist organization.  Nor do they allege that the Settlers have publicly stated

terrorist goals or are associates of established terrorist organizations.  *Cf. Boim*, 549 F.3d at 693-

94 (noting that a knowing donor to Hamas "would know that Hamas was gunning for Israelis . . .

and that donations to Hamas . . . would enable Hamas to kill or wound, or try to kill, or conspire

to kill more people in Israel"); *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 428 (E.D.N.Y. 2009)

(holding that the plaintiffs adequately alleged scienter where the complaint alleged that the

defendant's client had engaged in fundraising for Hamas, where the client's parent organization

had been designated as a Specially Designated Global Terrorist by the United States government,

and where "numerous . . . publicly available sources of information suggested that [it] was

funneling money to terrorist organizations"); *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp.

2d 609, 630 (E.D.N.Y. 2006) (holding that plaintiffs stated an ATA claim against a bank for

providing services to a foundation that had been designated by Israel as a terrorist organization,

and whose accounts had been frozen by a British regulator on evidence that it channeled money

to Hamas).

       To be sure, the Amended Complaint alleges that "[t]he Settlers have openly, publicly and

repeatedly acknowledged having a policy that is referred to as 'Price Tag' attacks" — a policy of

"exacting a 'price' against Palestinian targets or Israeli security forces in response to actions by

the Israeli government" by engaging in "acts of vandalism."  (Am. Compl. ¶¶ 77-78).  But that

allegation does not suffice for present purposes.  For one thing, the Amended Complaint alleges

no details as to when or how the Settlers professed such a policy — or how an unorganized

group of five hundred thousand people could even do so in the first place.  Moreover, the

assertion is in tension with an assertion found earlier in the Amended Complaint, that "[t]here are

Settler groups who have adopted a so-called 'Price Tag' policy."  (Am. Compl. ¶ 59 (emphasis

added)).  More broadly, the Amended Complaint does allege that *some* of the Settlers committed

terrorist attacks (Am. Compl. ¶¶ 66, 79, 81), that those attacks were well-publicized (*id.* ¶¶ 70-

74, 76), and that certain individuals, organizations, and sub-groups among the Settlers publicly

endorse terrorism (*id.* ¶¶ 59, 62-67).  But the Amended Complaint never contends that

Defendants gave money directly to those specific individuals or groups.  Nor does it even specify

what proportion of the "over half a million" Settlers those individuals and groups comprise.  (*Id.*

¶ 58).  In the absence of such details, there are simply no facts alleged that could provide the

Court with a basis to infer that Defendants knew, or were deliberately indifferent to, the fact that

the wire transfers would be used to support terrorist activity.

### 2.  Proximate Causation

The Amended Complaint also fails to allege facts supporting the third element of an ATA

claim: causation.  It is well established that an ATA plaintiff must plead proximate causation.

*See Rothstein v. UBS AG*, 708 F.3d 82, 94-96 (2d Cir. 2013); *see also In re Terrorist Attacks on*

*September 11, 2001*, 714 F.3d 118, 123-24 (2d Cir. 2013).  As a general matter, that requires

Defendants' actions to have been "'a substantial factor in the sequence of responsible causation,'

and that the injury was 'reasonably foreseeable or anticipated as a natural consequence.'"

*Strauss*, 925 F. Supp. 2d at 432 (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir.

2003)).  In the context of an ATA action, proximate causation requires non-conclusory, plausible

allegations of "a proximate causal relationship between the cash transferred . . . and the terrorist

attacks . . . that injured plaintiffs."  *Rothstein*, 708 F.3d at 97.

The Amended Complaint lacks such allegations for reasons similar to those discussed

with respect to scienter.  As was the case in *Rothstein*, "[t]he Complaint does not allege that

[Defendants were] . . . participant[s] in the terrorist attacks that injured plaintiffs."  *Rothstein*,

708 F.3d at 96.  And although it does allege that Defendants "provided money to [the Settlers

and settlements]," *id.*, it does not claim that they provided money to the specific organizations or

individuals that engaged in terrorist activities, *cf. id.* at 97 ("[T]he fact remains that Iran[, the recipient of the funds,] is a government, and as such it has many legitimate agencies, operations, and programs to fund.").  In fact, the Amended Complaint does not even identify which individuals or organizations were responsible for the attacks that injured the American Plaintiffs — the only Plaintiffs who have standing to bring claims under the ATA — other than by stating that one was stoned by "[t]he Settlers" (Am. Compl. ¶ 23) and that the other was attacked by "a group of Settlers" (*id.* ¶ 24).  Essentially, the Amended Complaint alleges that Defendants transferred funds to an unorganized group of approximately five hundred thousand people, and that some people in that group committed attacks against the American Plaintiffs.  Those allegations are not even sufficient to show but-for causation, *see Rothstein*, 708 F.3d at 97 (noting the Complaint's failure to allege that "if [the defendant] had not transferred U.S. currency to Iran, Iran . . . would not have funded the attacks in which plaintiffs were injured"), let alone the more demanding standard of proximate causation.

**B.  The ATS Claims**

     The Court turns then to Plaintiffs' ATS claims.  The ATS provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  28 U.S.C. § 1350.  The ATS is "a jurisdictional statute," whose "grant is best read as having been enacted on the understanding that the common law would provide a cause of action for [a] modest number of international law violations."   *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724 (2004).  Plaintiffs claim that their claims are cognizable under the ATS because Defendants violated international law by "financing the Settlers, . . . includ[ing] the Settlers who attacked Plaintiffs."  (Pls.' Mem. 18). The claims fail for two independent reasons.

First, Plaintiffs fail to plausibly allege that Defendants violated international law. Implicitly, Plaintiffs' ATS claims are grounded on an aiding-and-abetting theory of liability. *See Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 258 (2d Cir. 2009) (holding that plaintiffs "may plead a theory of aiding and abetting liability under the ATS" (internal quotation marks and alterations omitted)). The mental state required for aiding-and-abetting liability under the ATS, however, is "purpose rather than knowledge alone." *Id.* at 259. In other words, for a defendant to be held liable under the ATS for a violation of international law committed by another, that defendant must not only provide "assistance . . . which has a substantial effect on the perpetration of the crime," but must also "do[] so with the *purpose* of facilitating the commission of that crime." *Id.* at 258 (emphasis added and internal quotation marks omitted). Having already found that the allegations in the Amended Complaint are insufficient to establish that Defendants possessed knowledge that the funds transferred to the Settlers would be used to aid terrorist activity, it follows *a fortiori* that the allegations are insufficient to establish that Defendants intended for their funds to be used in such a manner.

Second, the law in the Second Circuit is clear that the ATS does not confer jurisdiction over claims brought against corporations. *See Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 120 (2d Cir. 2010), *aff'd on other grounds*, 133 S. Ct. 1659 (2013). In *Kiobel*, the Second Circuit held that because "customary international law . . . has never extended the scope of liability [for a violation of a given norm] to a corporation," claims against corporations "fall outside the limited jurisdiction provided by the ATS." *Id.* The Supreme Court affirmed the decision, albeit on other grounds — namely, that the presumption against extraterritorial application of domestic statutes applies to the ATS. *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1669 (2013). Nevertheless, the Second Circuit's holding regarding corporate

liability under the ATS remains binding on this Court, and the Supreme Court's remark that "mere corporate presence" in the United States would not displace the presumption against extraterritoriality, *id.* at 1669, does not suggest otherwise.  *See Tymoshenko v. Firtash*, No. 11 Civ. 2794 (KMW), 2013 WL 4564646, at *3 (S.D.N.Y. Aug. 28, 2013) (rejecting that very argument because "[t]his Court is bound by the Second Circuit decision unless and until the Supreme Court or an en banc panel of the Second Circuit unambiguously rejects its rationale"). Here, all Defendants are corporations or corporate-type entities.  (*See* Am. Compl. ¶¶ 34, 38, 42, 45, 47).[2]  Accordingly, Plaintiffs' ATS claims "fall outside [the statute's] limited jurisdiction." and must be dismissed.  *Kiobel*, 621 F.3d at 120.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED, and the Amended Complaint is dismissed.  The Clerk of Court is directed to terminate Docket No. 15 and to close the case.

SO ORDERED.

Dated: May 5, 2014
　　　　New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[2]    Plaintiffs assert in their Surreply that Defendant Central Fund of Israel "appears to be unincorporated" (Pls.' Sur-Reply Mem. Law Opp'n Defs.' Mot. Dismiss ("Pls.' Surreply") (Docket No. 23) 1), but that assertion is in conflict with the allegation in the Amended Complaint — which the Court is required to accept as true, *see LaFaro*, 570 F.3d at 475 — that "Defendant Central Fund of Israel is believed to be a New York Corporation."  (Am. Compl. ¶ 42).  In any event, the assertion is irrelevant for purposes of this motion, as no individual has been named as a Defendant in this lawsuit, and there is no indication that the Second Circuit's decision in *Kiobel* is limited to corporations, as opposed to other abstract juridical entities.  *See Kiobel*, 621 F.3d at 119 (noting that "the principle of individual liability for violations of international law has been limited to natural persons — not 'juridical' persons *such as* corporations," and citing the Nuremberg tribunal's statement that "crimes against international law are committed by men, not by *abstract entities*") (emphases added)).